Filed 8/31/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B325493 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA412073) |
| v. | |
| FREDY ROJAS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, George G. Lomeli, Judge. Affirmed in part; reversed and remanded in part with directions.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, Kathy S. Pomerantz and Stefanie Yee, Deputy Attorneys General, for Plaintiff and Respondent.

In 2013 appellant Fredy Rojas started a fistfight with his cousin Antonio at a family party. Appellant's fellow gang members intervened, and one of them fatally shot Antonio. Appellant was convicted of voluntary manslaughter and gang and firearm enhancements and sentenced to a total term of 22 years.

In 2022, appellant filed a petition for resentencing under Penal Code section 1172.6 (former section 1170.95).[1] The trial court granted the petition, vacated appellant's conviction, and resentenced him to the midterm of three years on the target offense of assault with force likely to cause great bodily injury. The court awarded appellant the same number of custody credits he was awarded at his initial sentencing and reimposed the same fines, fees, and direct victim restitution. The court placed appellant on parole for a period of two years.

Appellant contends the court erred in several respects. He first argues that he should have received additional custody credits for the time he served on his original sentence. Respondent Attorney General concedes appellant is correct, and we agree. We also agree that appellant's excess custody credits should be applied in satisfaction of his restitution and parole revocation fees pursuant to the version of section 2900.5 effective at the time of his crime. However, we reject appellant's contentions that his excess credits should also offset nonpunitive assessments and parole, and that the court erred in reimposing direct victim restitution. We accordingly remand with directions

---

[1] Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. We hereafter refer to the statute as section 1172.6. All further statutory references are to the Penal Code unless otherwise indicated.

for the trial court to recalculate appellant's custody credits and apply excess credits in satisfaction of the $280 restitution fine and $280 parole revocation fine.  The order is otherwise affirmed.

## FACTUAL BACKGROUND

For purposes of this appeal, appellant accepts the facts as recited in *People v. Acosta* (May 5, 2017, B267775) [nonpub. opn.], in which a different panel of this court affirmed appellant's conviction.  The facts relevant here include the following:

Appellant's cousin Antonio asked him to leave a family party after appellant and several companions arrived uninvited. Appellant punched Antonio and a fistfight ensued.  Appellant shouted something to the effect of "woo-woo" to his companions, who came to his aid.  The fight grew into a melee involving 15 to 20 people. One of appellant's companions, Emir Acosta, drew a gun and fatally shot Antonio.  (See *People v. Acosta, supra.*)

## PROCEDURAL HISTORY

### I.    Conviction and Sentence

Appellant and Acosta were jointly charged with murder. (§ 187, subd. (a).)  The information alleged that the murder was committed in association with and to benefit a criminal street gang (§ 186.22, subd. (b)(1)(C)) and that a principal, Acosta, personally used a firearm to commit the offense (§ 12022.53, subds. (b)-(d)).  The information also charged Acosta with being a felon in possession of a firearm. (§ 29800, subd. (a)(1).)  (*People v. Acosta, supra.*)

Appellant and Acosta were tried jointly.  The prosecution argued that appellant either directly aided and abetted the shooting of Antonio, or that he aided and abetted an assault and Antonio's death was a natural and probable consequence of that assault.  The court instructed the jury on the natural and

3

probable consequences doctrine.  The jury convicted Acosta of second degree murder and being a felon in possession of a firearm. It acquitted appellant of murder, but found him guilty of the lesser included offense of voluntary manslaughter.  The jury found the gang and firearm allegations true as to both Acosta and appellant.  (*People v. Acosta, supra*.)

The trial court sentenced appellant to a total of 22 years in state prison.  (*People v. Acosta, supra*.)  It also imposed a restitution fine of $280 (§ 1202.4, subdivision (b)), imposed and stayed a parole revocation restitution fine of $280 (§ 1202.45), and imposed a $40 court operations assessment (§ 1465.8, subd. (a)(1)) and a $30 criminal conviction assessment (Gov. Code, § 70373).  The court ordered appellant to pay $13,046.74 in direct victim restitution to Antonio's family for Antonio's cemetery plot and headstone, and $5,000 to the Victim Compensation and Government Claims Board (§ 1202.4, subd. (f)).[2]  The court awarded appellant a total of 1,888 days of custody credit:  944 actual days and 944 days of good time credit.

A different panel of this court affirmed appellant's convictions and sentence on direct appeal.  (See *People v. Acosta, supra*.)

## II.    Section 1172.6 Proceedings

On January 6, 2022, appellant filed a petition for resentencing under section 1172.6.  At some point, the court appointed counsel for him.  On May 19, 2022, the People filed a response conceding that appellant had made a prima facie showing of eligibility for relief and requested that the court issue

---

[2]    The court ordered appellant and Acosta to pay the direct victim restitution jointly and severally.

4

an order to show cause and set the matter for an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3).

On September 21, 2022, the People and appellant's counsel stipulated that appellant was entitled to be resentenced under section 1172.6. They further stipulated that appellant would be resentenced for assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)).

The same day, the court vacated appellant's voluntary manslaughter conviction and resentenced him to the midterm of three years for the assault. The court stated that "the original terms and conditions, in terms of fines and fees . . . will stand." The court further ruled that the direct victim restitution of $18,671.47 for "funeral and burial costs" would stand. The court explained, "[i]t does result from his actions even though it's a 245(a)(4), so that order will stand in terms of the restitution." Appellant's counsel did not object. He also did not object when the court ordered two years of parole.

Appellant's counsel reminded the court to award appellant custody credit. The court clerk reported that appellant had 944 days of actual time when he was sentenced in 2016. The court stated that the precise number of credits "doesn't matter, because the CDCR will recalculate all that," and "[f]or all intents and purposes, it's time served." Appellant's counsel then asserted the actual time was 4,684 days, or nearly 13 years; the People did not provide an alternative number. The court said, "Okay, and CDCR will take it from there." The minute order documenting the hearing does not say anything about custody credits; the abstract of judgment states that appellant received credit for 944 days of actual time and 944 days of conduct credit, for a total of 1,888 days.

5

Appellant timely appealed.

**DISCUSSION**

## I.     Custody Credits

Appellant contends, and respondent agrees, that the trial court did not award him the full amount of custody credit to which he was entitled.  We agree.

"Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts."  (§ 2900.1.)  In the specific context of a resentencing under section 1172.6, a person resentenced "shall be given credit for time served."  (§ 1172.6, subd. (h).)  Under these provisions, "the trial court having modified defendant's sentence, should have determined all actual days defendant had spent in custody, whether in jail or prison, and awarded such credits in the new abstract of judgment."  (*People v. Buckhalter* (2001) 26 Cal.4th 20, 41.)  The trial court did not fulfill this obligation, rendering appellant's sentence unauthorized.  (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.)

Although his counsel below suggested that appellant was entitled to 4,684 days of actual credit, appellant now asserts "that the five years, nine months and 21 days appellant spent in custody from January 5, 2016 through September 21, 2022 totals 2085 days."  He contends that the 1,888 days he was previously awarded should be added to this amount, "for a total of 3943 days

6

of credit."[3]  Citing the May 25, 2013 arrest date that appears in *People v. Acosta, supra*, respondent contends appellant should have been awarded 956 days of actual time credit and 956 days of good time credit when he was initially sentenced on January 5, 2016, instead of 944 days of each.  Respondent further asserts that appellant served an additional 2,451 days of time between January 5, 2016 and September 21, 2022, such that he should receive credit for 3,407 actual days (956 + 2,451) and 956 days of presentence good conduct credit, for a total custody credit of 4,363 days.  Appellant does not address the discrepancy between his calculations and respondent's in his reply brief.

Although we may correct the unauthorized sentence on appeal, the appellate record is limited and the parties' proposed calculations differ significantly.  We accordingly remand so the trial court may calculate the correct credits in the first instance and prepare a new abstract of judgment.

## II.     Application of Excess Credits to Fines and Assessments

Appellant contends that regardless of the precise amount of custody credits he accrued, he served enough excess time to offset the $280 restitution fine, $280 parole revocation fine, $40 court operations assessment, and $30 conviction assessment.[4]

---

[3]     Even if appellant's calculation of 2,085 days is correct, which it does not appear to be, 2,085 + 1,888 = 3,973.  We also note that appellant states elsewhere in his brief that he served 3,029 actual days in custody.

[4]     Appellant recognizes that this argument could be subject to forfeiture and argues in the alternative that his counsel was ineffective for failing to object to the imposition of fees, fines, and assessments below.  Respondent addresses appellant's argument on the merits and does not argue forfeiture.  To the extent this

Respondent concedes appellant's custody credits should offset the $280 parole revocation fine, but asserts he is otherwise incorrect. We conclude appellant is entitled to have both the $280 restitution fine and the $280 parole revocation fine offset by his excess custody credits.

"[T]he only type of excess custody credit available to resentenced persons is a credit against punitive assessments." (*People v. Pinon* (2016) 6 Cal.App.5th 956, 967.) Section 2900.5 dictates how that credit must be applied. We agree with the parties that the relevant version of section 2900.5 is the one that was in effect at the time appellant committed his crime. (See *People v. Morris* (2015) 242 Cal.App.4th 94, 102.) The crime in this case occurred on or about May 25, 2013. Respondent contends that a then-pending amendment to section 2900.5 that eliminated restitution fines from its ambit should apply here. We disagree. The amendment did not take effect until January 1, 2014, and appellant's crime was committed on or about May 25, 2013. The version of section 2900.5 in effect throughout 2013 provided that excess custody credits should be applied to restitution fines:

"In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, . . . all days of custody of the defendant, . . . shall be credited upon his or her term of imprisonment, or credited to any fine on a proportional basis, including, but not limited to, *base fines and*

issue is forfeited, we exercise our discretion to reach the merits. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party. [Citations.] Indeed, it has the authority to do so."].)

*restitution fines*, which may be imposed, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served. In any case where the court has imposed both a prison or jail term of imprisonment and a fine, any days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and thereafter the remaining days, if any, shall be applied to the fine on a proportional basis, *including, but not limited to, base fines and restitution fines*." (Former § 2900.5, subd. (a), italics added.)

Under the plain terms of former section 2900.5, as the statute existed at the time of the offense, the trial court was required to apply appellant's excess custody credits to reduce his $280 restitution fine at a rate of no less than $30 per day of excess custody credit. Notwithstanding the ambiguity surrounding the precise amount of custody credit to which appellant is entitled, he plainly has enough to offset the $280 restitution fine; only 10 days would be required at the minimum statutory rate of $30 per day. Therefore, we deem the restitution fine satisfied in full. (See *People v. Lamoureux* (2020) 57 Cal.App.5th 136, 152 (*Lamoureux*).) We reach the same conclusion as to the $280 parole revocation fine, which the parties agree falls within the ambit of section 2900.5 because it is punitive.

Appellant contends his excess credits should also apply to offset the $40 court operations assessment and $30 conviction assessment. We reject this contention. These assessments are not punitive and therefore lie outside the scope of section 2900.5.

9

(See *People v. Alford* (2007) 42 Cal.4th 749, 756-757 [assessment imposed under § 1465.8 is not punitive]; *People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1111-1112 [assessment imposed under Gov. Code, § 70373 is not punitive].)

On remand, we direct the trial court to deem the $280 restitution fine imposed under section 1202.4 and the $280 parole revocation fine imposed under section 1202.45 satisfied in full by appellant's excess days spent in custody pursuant to former section 2900.5, subdivision (a). Appellant remains subject to the $40 court operations assessment and $30 conviction assessment.

## III.    Application of Excess Credits to Parole

Appellant contends that his excess custody credits also should have precluded the court from imposing a two-year parole term. He acknowledges that *Lamoureux*, *supra*, 57 Cal.App.5th 136 and *People v. Wilson* (2020) 53 Cal.App.5th 42 (*Wilson*) both hold that the trial court may impose a period of parole when resentencing a petitioner under section 1172.6 "notwithstanding excess custody credits." (*Wilson*, *supra*, 53 Cal.App.5th at p. 46; see also *Lamoureux*, *supra*, 57 Cal.App.5th at pp. 138-139.) Appellant contends these cases are distinguishable because they predate and thus did not consider the requirement in section 1172.6, subdivision (d)(1) that resentencing under the statute must occur "in the same manner as if the petitioner had not previously been sentenced." Respondent asserts that appellant forfeited this argument by failing to raise it below, and it lacks merit in any event. We agree that the issue has been forfeited by

10

appellant's failure to object below.  Even if it had not been, we would conclude that parole was properly imposed.[5]

As a general rule, when a person is originally sentenced, "excess presentence credits can reduce a period of parole." (*Wilson, supra,* 53 Cal.App.5th at p. 48, citing *In re Sosa* (1980) 102 Cal.App.3d 1002, 1005, and § 2900.5, subd. (a).)  In the context of resentencing under section 1172.6, the first sentence of subdivision (h) provides that "A person who is resentenced pursuant to this section shall be given credit for time served." The second sentence of subdivision (h) gives the trial court discretion to impose parole:  "The judge may order the petitioner to be subject to parole supervision for up to two years following the completion of the sentence."

Appellant points to the first half of subdivision (h), along with subdivision (d)(1), which states that a person resentenced under section 1172.6 must be sentenced "as if the petitioner had not previously been sentenced."  (§ 1172.6, subd. (d)(1).)  He contends that "the mandatory language of subdivision (d)(1) precludes imposition of an additional parole period in excess of whatever credits the successful petitioner accrued during their incarceration, while the permissive language of subdivision (h) enables courts to set a limited parole period for those petitioners who have not accrued significant excess credits."  This is a question of statutory interpretation that is reviewed de novo. (*Lamoureux, supra,* 57 Cal.App.5th at p. 142.)

*Wilson* and *Lamoureux* both concluded that section 1172.6, subdivision (h) (then numbered 1170.95, subdivision (g)), did not

---

[5]     Because we have concluded that appellant's forfeited argument also lacks merit, we do not address his alternative contention that his counsel rendered ineffective assistance.

11

prohibit a resentencing court from imposing parole where a petitioner had excess credits. They relied heavily on *People v. Morales* (2016) 63 Cal.4th 399 *(Morales)*, in which the Supreme Court considered whether excess custody credits reduce or eliminate the parole period when a person is resentenced under section 1170.18, the Proposition 47 resentencing statute. The statute at issue in *Morales* provided that a "A person who is resentenced [under section 1170.18] . . . shall be given credit for time served and shall be subject to parole for one year following completion of his or her sentence, unless the court, in its discretion, as part of its resentencing order, releases the person from parole." (§ 1170.18, subd. (d).) The Supreme Court found significant that the section 1170.18 did "not state . . . that credit for time served could reduce the period of parole" (italics omitted), unlike "the statute concerning presentence credit in ordinary cases" (*Morales*, *supra*, 63 Cal.4th at p. 406), section 2900.5, which provides both that "all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment" (§ 2900.5, subd. (a)), and that "'term of imprisonment' includes . . . any period of imprisonment and parole." (§ 2900.5, subd. (c).) *Morales* noted that section 1170.18 states "the first part but not the second." (*Morales*, *supra*, at p. 406.) For this and other reasons, including other language in the statute, a survey of the ballot materials regarding the statute, and policy concerns, the Supreme Court concluded that section 1170.18 does not require excess custody credits to be applied to a period of parole when a person is resentenced under that statute. (See *id*. at pp. 406-409.)

*Wilson* applied the reasoning of *Morales* to conclude that the words "credit for time served" contained in section 1172.6,

12

subdivision (h) do not, standing alone, mandate an excess credit offset against a person's parole supervision period. (*Wilson*, *supra*, 53 Cal.App.5th at p. 50.) It explained, a "court is not required to mechanically apply excess custody credits to reduce or eliminate the parole period imposed at a resentencing pursuant to section [1172.6]. Instead, and notwithstanding excess custody credits, the court may exercise its discretion when deciding whether to order a period of parole." (*Id.* at p. 46.)

*Lamoureux* "agree[d] with, and adopt[ed], the *Wilson* court's reasoning." (*Lamoureux*, *supra*, 57 Cal.App.5th at p. 145.) It further invoked the "usual presumption" that the Legislature intended sections 1170.18 and 1172.6 to be construed the same, because it used substantially similar language. (*Ibid.*) It explained, "[g]iven the[ ] parallels between section 1170.95, subdivision (g) and the Proposition 47 statute, we presume the Legislature was aware of the *Morales* decision and its analysis of the Proposition 47 statute. We also assume the Legislature intended section 1170.95, subdivision (g) to receive the same construction the *Morales* court previously gave to the Proposition 47 statute." (*Ibid.*)

Appellant correctly notes that neither *Wilson* nor *Lamoureux* considered the impact of section 1172.6, subdivision (d)(1). We nevertheless find *Lamoureux*'s analysis persuasive, particularly its emphasis on the Legislature's use of substantially similar language in sections 1170.18 and 1172.6 despite its presumed awareness of *Morales*'s interpretation of section 1170.18. Appellant asserts that the Legislature included the additional language of section 1172.6, subdivision (d)(1), thereby rendering the comparison to section 1170.18 and *Morales* inapt. We disagree. In *Morales*, the Supreme Court also noted that the

13

voters who enacted section 1170.18 were aware of section 2900.5, which expressly states that any "credit for time served" applies to the parole portion of any sentence. (See *Morales*, *supra*, 63 Cal.4th at p. 406; see also § 2900.5, subd. (c).) The Legislature's decision not to incorporate or duplicate language from section 2900.5 in section 1172.6 despite its presumptive awareness of this aspect of *Morales* indicates its intent to adopt the approach to excess custody credits and parole described in *Morales*.

Interpreting section 1172.6 as appellant suggests would result in parole being eliminated or reduced in a substantial majority of cases; petitioners seeking relief under that section typically have been serving lengthy felony sentences for murder, attempted murder, and voluntary manslaughter. (See *Wilson*, *supra*, 53 Cal.App.5th at p. 51; see also *Morales*, *supra*, 63 Cal.4th at p. 405.) Such a result does not square with the express language of the statute authorizing parole for up to two years and would "undermine the trial court's discretion in many cases." (*Morales*, *supra*, 63 Cal.4th at p. 405.)

## IV.  Direct Victim Restitution

Appellant finally contends that the trial court erred by ordering him to pay restitution to the victims for expenses related to Antonio's burial. He argues that his assault conviction arose from his fistfight with Antonio, "and not the victim's death resulting from his being shot by Mr. Acosta. As such, the victim's family did not suffer an economic loss 'as a result of the commission of a crime'" by appellant, and restitution accordingly cannot be ordered under section 1202.4. Respondent contends that appellant forfeited this argument. It further contends that the restitution order is proper because appellant's assault of Antonio was a substantial factor in Antonio's death. We reject

14

the claim of forfeiture (see *People v. Slattery* (2008) 167 Cal.App.4th 1091, 1094-1095), but agree with respondent that the argument is unmeritorious.

Appellant focuses primarily on the first subdivision of section 1202.4, the statute governing restitution. He emphasizes that subdivision (a)(1) states, "[i]t is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." In this case, the identified economic losses were all related to Antonio's non-accidental death; appellant contends he is no longer convicted of "that crime" and therefore should not be required to pay restitution. He asserts that *People v. Martinez* (2017) 2 Cal.5th 1093 (*Martinez*) is "dispositive of this issue." We disagree.

Section 1202.4 reaches more broadly than appellant suggests. Although section 1202.4 limits restitution to losses caused by the criminal conduct for which the defendant was convicted (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1249), "[t]hat is not to say that an acquittal on one count will preclude the imposition of a restitution order under all circumstances." (*People v. Percelle* (2005) 126 Cal.App.4th 164, 180.) Section 1202.4, subdivision (f) requires the court to order restitution "in every case in which a victim has suffered economic loss as a result of the defendant's *conduct*." (§ 1202.4, subd. (f), italics added.) "To the extent possible, the restitution order . . . shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for *every determined economic loss incurred as a result of the defendant's criminal conduct*." (*Id.*, subd. (f)(3), italics added.) Thus, "in the nonprobation context, a restitution

15

order is not authorized where the defendant's only relationship to the victim's loss is by way of a crime of which the defendant was acquitted." (*People v. Percelle*, *supra*, 126 Cal.App.4th at p. 180.)

Tort principles of causation are used to determine whether a loss was a result of a defendant's conduct. (*People v. Trout-Lacy* (2019) 43 Cal.App.5th 369, 372 (*Trout-Lacy*).)[6] Those principles require first that the act be a "cause in fact," or necessary antecedent of the loss. (*Ibid.*) "'[T]he "but for" test governs questions of factual causation' except in cases involving concurrent independent causes, in which case the 'substantial factor' test applies." (*Ibid.*) Under the "but for" test, a defendant's conduct is a cause of the injury if the injury would not have occurred but for the defendant's conduct. (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396 (*Foalima*).) The substantial factor test generally "subsumes the 'but for' test" and holds that conduct is a cause in fact when it is a substantial factor in bringing about the injury. (*Ibid.*) "The second aspect of legal causation focuses on public policy considerations that limit an actor's responsibility for the consequences of his conduct." (*Trout-Lacy*, *supra*, 43 Cal.App.5th at p. 372.)

Appellant concedes that his conduct included starting a fistfight with Antonio and summoning his friends when the fight began to go badly for him. One of those friends, Acosta, fatally shot Antonio. Appellant's criminal conduct—the assault of Antonio—clearly set in motion the unfortunate chain of events

---

[6] Notably, the defendant in *Trout-Lacy* was also convicted of assault by force likely to cause great bodily injury and ordered to pay restitution for the victim's funeral expenses despite not being convicted of the victim's murder. (See *Trout-Lacy, supra*, 43 Cal.App.5th at pp. 371-372.)

16

that culminated in Antonio's death and thus bore a substantial relationship to the victims' losses. Even if Acosta's gunshot is viewed as an intervening cause, it does not relieve appellant of liability because it was not an unforeseeable or extraordinary occurrence. (*Foalima*, *supra*, 239 Cal.App.4th at p. 1397.) It was reasonably foreseeable that summoning numerous people to assist in a fight could result in serious or fatal injury to any of the participants. We are not persuaded otherwise by appellant's assertion in reply that assault by means likely to cause great bodily injury is not a lesser included offense of manslaughter.

We are also unpersuaded by appellant's reliance on *Martinez*. There, the court held that a defendant convicted of leaving the scene of a traffic accident could not be subject to restitution for injuries sustained in the accident itself. The court explained, "defendant's crime was not being involved in a traffic accident, nor does his conviction imply that he was at fault in the accident. Defendant's crime, rather, was leaving the scene of the accident without presenting identification or rendering aid. Thus, under section 1202.4, the trial court was authorized to order restitution for those injuries that were caused or exacerbated by defendant's criminal flight from the scene of the accident, but it was not authorized to award restitution for injuries resulting from the accident itself." (*Martinez*, *supra*, 2 Cal.5th at p. 1098.) Here, appellant's crime was assaulting Antonio. Antonio's death was clearly and foreseeably traceable to that conduct even if not directly attributable to appellant's fists. As the trial court observed, and appellant does not seriously dispute, "[i]t does result from his actions." The restitution award was supported by substantial evidence and was not an abuse of

17

the court's discretion.  (*Trout-Lacy*, *supra*, 43 Cal.App.5th at p. 373.)

## DISPOSITION

The order is reversed in part, specifically as to the calculation of appellant's custody credits and their application to his restitution and parole revocation fines.  The order is otherwise affirmed.  On remand, we direct the trial court to calculate appellant's custody credits and apply those credits in satisfaction of the $280 restitution fine imposed under section 1202.4 and the $280 parole revocation fine imposed under section 1202.45.  The court shall also prepare a new abstract of judgment.

## CERTIFIED FOR PUBLICATION

COLLINS, ACTING P. J.

We concur:

MORI, J.

ZUKIN, J.