Filed 5/25/17

## IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
    Plaintiff and Respondent, )
) S219970
    v. )
) Ct.App. 4/2 E057976
DENNIS TERRY MARTINEZ, )
) San Bernardino County
    Defendant and Appellant. ) Super. Ct. No. FMB1200197
_____)

After defendant Dennis Terry Martinez pleaded guilty to leaving the scene of an injury accident in violation of Vehicle Code section 20001, subdivision (a) (Vehicle Code section 20001(a), commonly known as "hit and run"), the trial court sentenced him to three years in state prison. The trial court further ordered him to pay $425,654.63 to the victim as restitution for injuries suffered as a result of the accident. Defendant contends, and the Court of Appeal agreed, that the trial court erred in fixing the amount of restitution. We agree as well.

Where, as here, a criminal defendant is convicted and sentenced to state prison, section 1202.4 of the Penal Code (section 1202.4) provides that the defendant must pay restitution directly to the victim for losses incurred "as a result of the commission of a crime." (§ 1202.4, subd. (a)(1); see *People v. Giordano* (2007) 42 Cal.4th 644, 651–652 (*Giordano*).) "To the extent possible," direct victim restitution is to be ordered in an amount "sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(3).) Application of these

1

provisions depends on the relationship between the victim's loss and the defendant's crime. Here, defendant's crime was not being involved in a traffic accident, nor does his conviction imply that he was at fault in the accident. Defendant's crime, rather, was leaving the scene of the accident without presenting identification or rendering aid. Thus, under section 1202.4, the trial court was authorized to order restitution for those injuries that were caused or exacerbated by defendant's criminal flight from the scene of the accident, but it was not authorized to award restitution for injuries resulting from the accident itself.

## I.

Defendant was driving his pickup truck during the early evening of April 26, 2012, when he was involved in a collision with a 12-year-old boy riding on a scooter. Defendant stopped his truck and checked on the boy, who had been seriously injured in the accident. The victim's mother rushed to the scene. When she arrived, defendant returned to his truck. Defendant later told police that he waited there until he saw the boy loaded into an ambulance, then drove off. At the time of the accident, defendant was unlicensed and on felony probation. He told officers that he left the scene because he was afraid that he had violated his probation by driving without a license.

The victim sustained multiple facial fractures and a fractured clavicle and was diagnosed with a traumatic brain injury. He was hospitalized in intensive care for nine days before being transferred to a rehabilitation center.

Police ultimately identified the vehicle involved in the accident and traced the vehicle to defendant, at which point defendant came forward. In an interview with police, defendant admitted to his involvement in the accident and that he left the scene. Defendant reported that he was not intoxicated at the time of the accident; he stated that he had used medical grade marijuana at 8:00 a.m. on the

2

day of the accident but that its effects had worn off by 11:00 a.m., approximately seven and a half hours before the accident. Defendant apologized and told officers that he understood he had committed a crime by fleeing the scene.

Defendant was charged with one felony count of leaving the scene of an injury accident. (Veh. Code, § 20001(a).) He pleaded guilty and the trial court sentenced him to a three-year term of imprisonment with 192 days of credit for time served and good conduct. The parties stipulated that the felony complaint and police report would provide a factual basis for the plea. At the sentencing hearing, the victim's mother stated that her son had collided with the truck and that the collision was an accident. Defendant reported that the victim hit defendant's vehicle when the victim failed to stop on his scooter. The trial court made no findings concerning defendant's responsibility for the accident.

Several months after sentencing, the trial court considered whether defendant could be ordered to pay restitution for the medical costs that the victim incurred as a result of the accident. The trial court answered that question in the affirmative, relying on *People v. Rubics* (2006) 136 Cal.App.4th 452 (*Rubics*). In *Rubics*, the Court of Appeal upheld a direct restitution award of $44,414 in funeral expenses against a defendant convicted of leaving the scene of the accident that resulted in the victim's death. Echoing the reasoning of *Rubics*, the trial court ruled that the victim in this case was entitled to restitution for losses incurred as a result of the accident because "even if it was just a pure accident," involvement in an accident "is still an element of the crime." Following the trial court's ruling, the parties entered into a stipulated agreement fixing $425,654.63 — the amount of the victim's bill for his stay in intensive care — as the amount of direct victim restitution.

3

The Court of Appeal reversed the restitution order. It concluded that the trial court erred because " '[t]he gravamen of a section 20001 offense . . . is not the initial injury of the victim, but leaving the scene without presenting identification or rendering aid.' " (Quoting *People v. Escobar* (1991) 235 Cal.App.3d 1504, 1509 (*Escobar*).) The court disagreed with *Rubics*, which it characterized as "an anomaly in an otherwise 'unbroken line of cases stretching back more than 50 years' " that have characterized the offense in the same manner. (Quoting *People v. Valdez* (2010) 189 Cal.App.4th 82, 89 (*Valdez*).) The court concluded that the trial court lacked the power to order restitution for injuries caused by the accident itself because "defendant was not convicted for any offense involving responsibility for the actual accident and no factual determination of his responsibility for the collision or the victim's injuries ha[d] been made." The court remanded the matter to permit the People to seek restitution for any losses caused or exacerbated by defendant's flight.

We granted review to resolve the conflict about whether, in imposing a sentence for a violation of Vehicle Code section 20001(a), a trial court may order direct restitution for injuries the victim suffered as a result of the underlying accidental collision.

## II.

### A.

Under California law, "[c]onvicted criminals may be required to pay one or more of three types of restitution." (*Giordano*, *supra*, 42 Cal.4th at p. 651.) They may be required to pay a restitution fine into the state Restitution Fund, to pay restitution directly to the victim, or to pay restitution as a condition of probation. The statutory requirements vary depending on the type of restitution at issue. (*Id.* at pp. 651–652.)

4

This case concerns an order of direct victim restitution. Under the California Constitution, as amended in 1982 by Proposition 8 (commonly known as The Victims' Bill of Rights), every crime victim has a right to be compensated by the defendant for losses incurred as a result of the defendant's crime. (Cal. Const., art. I, § 28, subd. (b)(13).) At the time Proposition 8 was passed, "victims had some access to compensation through the Restitution Fund, and trial courts had discretion to impose restitution as a condition of probation." (*Giordano*, *supra*, 42 Cal.4th at p. 652.) Courts did not, however, have general statutory authority to order the defendant to pay restitution directly to the victim of his or her crime. (See *People v. Broussard* (1993) 5 Cal.4th 1067, 1072–1074 (*Broussard*).) In passing Proposition 8, the electorate expanded victims' access to compensation by declaring an "unequivocal intention . . . that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer," and instructing the Legislature to adopt legislation to implement this directive. (Prop. 8, adding Cal. Const., art. I, former § 28, subd. (b), as enacted June 8, 1982, reprinted at 1 Stats. 1982, p. A–186.)

The Legislature's response, currently codified in section 1202.4, similarly declares that it is the Legislature's intent "that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (§ 1202.4, subd. (a)(1).)[1] To

---

[1]  Because Proposition 8 was not self-executing, the Legislature enacted several statutes to implement the new law, including Penal Code former section 1203.04 and Government Code former section 13967. These statutes were ultimately repealed and consolidated into Penal Code section 1202.4, which now governs restitution orders in all criminal cases, except those in which the

*(footnote continued on next page)*

that end, section 1202.4 provides that, with certain exceptions not relevant here, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims." (*Id.*, subd. (f).)  The statute further provides that the court's restitution order shall, "[t]o the extent possible . . . fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (*Id.*, subd. (f)(3).)  This provision, as the Courts of Appeal have uniformly held, and as the People agree, authorizes trial courts to order direct victim restitution for those losses incurred as a result of the crime of which the defendant was convicted.  (See, e.g., *People v. Lai* (2006) 138 Cal.App.4th 1227, 1247–1248; *People v. Woods* (2008) 161 Cal.App.4th 1045, 1051–1052; see also *People v. Williams* (2010) 184 Cal.App.4th 142, 147 ["The only limitation the Legislature placed on victim restitution is that the loss must be an ' " 'economic loss' " ' incurred as a result of the defendant's criminal conduct."].)

In this respect, the restitution power conferred by section 1202.4 stands in contrast to a court's power to order restitution as a condition of probation.  As we explained in *People v. Carbajal* (1995) 10 Cal.4th 1114 (*Carbajal*), "[i]n granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety," including the power to "regulate conduct 'not itself criminal' " but " 'reasonably related to the crime of which the defendant was convicted or to future criminality.' " (*Id.* at pp. 1120–1121,

_____

*(footnote continued from previous page)*

defendant is sentenced to probation.  (Pen. Code, § 1203.1; *Giordano*, *supra*, 42 Cal.4th at pp. 652–654.)

quoting *People v. Lent* (1975) 15 Cal.3d 481, 486; see Pen. Code, § 1203.1, subd. (j).) This discretion, we noted, has long been held to include the power to order restitution "even when the loss was not necessarily caused by the criminal conduct underlying the conviction," including in cases in which "the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation]." (*Carbajal*, at p. 1121.) We held in *Carbajal* that this power was unaffected by the passage of Proposition 8 or its implementing legislation, neither of which manifested an intent to abrogate courts' discretion to order restitution as a condition of probation "where the victim's loss was not the result of the crime underlying the defendant's conviction, but where the trial court finds such restitution will serve" the purposes of probation. (*Carbajal*, at p. 1122.) A trial court's power to order restitution in probation cases is thus broader than its power to order direct victim restitution under section 1202.4 in cases in which the defendant receives a nonprobationary sentence. (See *People v. Anderson* (2010) 50 Cal.4th 19, 29 ["Trial courts continue to retain authority to impose restitution as a condition of probation in circumstances not otherwise dictated by section 1202.4. . . . When section 1202.4 imposes its mandatory requirements in favor of a victim's right to restitution, the statute is explicit and narrow. When section 1203.1 provides the court with discretion to achieve a defendant's reformation, its ambit is necessarily broader[.]"].)

In *Carbajal*, we concluded that a trial court does not abuse its discretion in a hit-and-run case by conditioning the defendant's probation on the payment of restitution to the owner of property damaged in the underlying accident. Such a condition, we explained, "can be reasonably related to the offense underlying the conviction and can serve the purposes of rehabilitating the offender and deterring

future criminality." (*Carbajal*, *supra*, 10 Cal.4th at p. 1119; see *id.* at pp. 1124–1125.)  We did not have occasion to address the distinct question whether, when a defendant is convicted of a hit-and-run offense and sentenced to state prison, a trial court may order direct victim restitution under section 1202.4, subdivision (f), for losses incurred as a result of the underlying accident.  It is to that question that we now turn.

**B.**

Section 20001(a) of the Vehicle Code provides:  "The driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004."  Vehicle Code sections 20003 and 20004, in turn, require the driver to stop and provide identification and render aid to the victim, as well as to report the accident to authorities if there is no police officer present.  Failure to comply with these requirements is a criminal offense.  (Veh. Code, § 20001, subd. (b)(1) & (2).)

As courts have repeatedly observed, although the Vehicle Code section 20001(a) offense is commonly referred to as a "hit and run," the term is something of a misnomer; the offense is "more accurately described as fleeing the scene of an injury accident." (*Valdez*, *supra*, 189 Cal.App.4th at p. 84.)  That is to say, " 'the act made criminal' " under the statute " 'is not the "hitting" but the "running." ' " (*Id.* at p. 87.)  " 'The legislative purpose of sections 20001 and 20003 is to prevent the driver of a vehicle involved in an injury-causing accident from leaving injured persons in distress and danger for want of medical care and from attempting to avoid possible civil or criminal liability for the accident by failing to identify oneself.' " (*Escobar*, *supra*, 235 Cal.App.3d at p. 1510.)

8

Under Vehicle Code section 20001(a), "[t]he occurrence of an injury accident is a condition precedent" to the imposition of a duty to stop, provide identification, and render aid — "but [it] is not an element of the crime" in the sense that it constitutes part of the conduct forbidden by the statute. (*Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1340.) Nor is any degree of fault required for conviction; a defendant who flees the scene of an injury accident has committed a crime even if the accident was solely the result of the victim's own negligence. (Veh. Code, § 20001(a).) As the United States Supreme Court once explained in upholding Vehicle Code section 20001 against constitutional challenge, "it is not a criminal offense under California law to be a driver 'involved in an accident.' An accident may be the fault of others; it may occur without any driver having been at fault." (*California v. Byers* (1971) 402 U.S. 424, 431 (plur. opn. of Burger, C. J.) [rejecting argument that a driver's disclosure obligations under California's hit-and-run statute create a "substantial risk of self-incrimination" in violation of the Fifth Amendment].)

The answer to the question in this case follows directly from this long-settled understanding of the crime made punishable by Vehicle Code section 20001(a): Restitution for losses incurred "as a result of the commission of a crime" includes losses incurred as a result of the defendant's unlawful flight from the scene of the accident in which he or she was involved, but not losses incurred solely as a result the accident itself.

The People acknowledge that "the occurrence of the accident, in itself, is not [independently] punishable as a criminal act" under Vehicle Code section 20001. They argue, however, that restitution for injuries resulting from an accident is nevertheless recoverable under Penal Code section 1202.4 because involvement in the collision is an element of the offense — that is, a fact that the

9

prosecution must prove to obtain a conviction. This argument draws heavily on *Rubics*, *supra*, 136 Cal.App.4th at pages 454, 462, in which the Court of Appeal upheld a direct restitution order for accident-related losses in a case in which the defendant fled the scene of an accident that resulted in the victim's death. The court in that case acknowledged that while the " 'gravamen of a section 20001 offense . . . is not the initial injury of the victim, but leaving the scene without presenting identification or rendering aid,' " a "necessary element of section 20001 is that [the defendant] was involved in an accident that caused serious injury or death." (*Id.* at pp. 458–459.) "Thus, although a primary focus of section 20001 may be the act of leaving the scene," the court reasoned, "a conviction also acknowledges the fleeing driver's responsibility for the damages he or she has caused by being involved in the accident itself." (*Id.* at p. 459.) The court upheld the restitution order after determining that substantial evidence supported the conclusion that the defendant had been at fault in the accident. (*Id.* at p. 462.) Relying on *Rubics*, the People argue that because involvement in an accident is an element of the hit-and-run offense, "it necessarily occurs in 'the commission of [that] crime' (Pen. Code, § 1202.4, subd. (a)(1)), and a court therefore can impose victim restitution for the injury to the extent it was caused by 'defendant's conduct' (*id.*, subd. (f))."

Of course, as previously noted, a conviction under Vehicle Code section 20001 does not, in fact, require any showing of "the fleeing driver's responsibility" for the underlying accident. (*Rubics*, *supra*, 136 Cal.App.4th at p. 459.) And if restitution for accident-related injuries required nothing more than proof that the driver was "involved in an accident that caused serious injury or death," then section 1202.4 would authorize an award of restitution even in cases in which the victim was solely at fault. To permit such an award based solely on

10

the defendant's passive involvement in the accident would serve no recognized restitutionary purpose. And, indeed, to require the defendant to compensate the victim for injuries for which the defendant bears no responsibility — much less for injuries the victim has in effect inflicted on him or herself — could raise significant constitutional questions. (Cf., e.g., *Paroline v. United States* (2014) ___ U.S. ___, ___ [134 S.Ct. 1710, 1726] [noting that the excessive fines clause of the Eighth Amendment may place limits on restitution awards].) We are aware of no appellate ruling that has countenanced such a result. (See *State v. Domingo* (Hawaii Ct.App. 2009) 216 P.3d 117 [reversing trial court restitution award where victim, whose blood-alcohol level was nearly three times the legal limit, caused accident from which defendant fled].)

Seeking to avoid that result here, the People insist that accepting their theory "does not mean that a defendant will be liable for the losses in every hit-and-run case." Rather, in the People's view, whether a particular defendant will be required to pay restitution for losses resulting from the accident is "a determination to be made by the sentencing judge at the restitution hearing," presumably based on the sentencing judge's view of whether the defendant was at fault in the accident, and therefore can be said to have "caused" the victim's injuries through his or her "conduct" within the meaning of section 1202.4, subdivision (f).

Whatever the merits of the People's argument as a policy matter, it cannot be squared with the plain language of section 1202.4. Section 1202.4 refers to losses incurred "as a result of the commission of a crime," not as the result of attendant facts or circumstances the prosecution must prove in order to obtain a conviction. Involvement in an accident is precisely such a circumstance; it forms no part of the conduct proscribed by Vehicle Code section 20001(a), but instead describes an event that gives rise to the statutory duty to stop, provide

11

identification, and render aid. Thus, even if defendant had been at fault in the accident — and the evidence in the record does not establish that he was — his negligence might well give rise to civil tort liability, but it would not give rise to an obligation to make direct victim restitution for injuries caused by a collision that involved no criminal wrongdoing.

Nor does the reference to losses resulting from the "defendant's conduct" in section 1202.4, subdivision (f), suggest a different result, as the People's argument might suggest. In the very same subdivision of the provision, the Legislature made clear that restitution is measured by the "dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's *criminal* conduct." (§ 1202.4, subd. (f)(3), italics added.) Read in context, the statute's reference to losses resulting from the "defendant's conduct" (*id*., subd. (f)) is not plausibly read to expand the scope of direct victim restitution to encompass losses resulting from *noncriminal* conduct, solely because that conduct gives rise to a duty the breach of which *is* punishable as a crime.[2]

---

[2]     As defendant notes, every state high court to address this question under a comparably worded restitution statute has reached the same conclusion. (See, e.g., *State v. Williams* (Fla. 1988) 520 So.2d 276, 277; *State v. Starkey* (Iowa 1989) 437 N.W.2d 573, 575; *State v. Beaudoin* (Me. 1986) 503 A.2d 1289, 1290; *State v. Steinolfson* (N.D. 1992) 483 N.W.2d 182, 184; *State v. Joyce* (S.D. 2004) 681 N.W.2d 468, 470–471; *State v. Eastman* (Or. 1981) 637 P.2d 609, 612, abrogated by Or. Rev. Stat., § 811.706 (1995); see also *State ex rel. McDougall v. Superior Court* (Ariz.Ct.App. 1996) 920 P.2d 784, 786.) Only the Montana Supreme Court has reached a different conclusion in a somewhat analogous setting, but it did so because Montana's restitution statute had been revised to "eliminat[e] the words requiring a victim to be a victim 'of the offense' and the victim's loss to be 'as a result of the offense.' " (*State v. Ness* (Mont. 2009) 216 P.3d 773, 778 [upholding restitution order as part of sentence for tampering with evidence following a hit-and-run accident resulting in victim's death].) The court in that case concluded that the Montana Legislature intended to "relax in some fashion the requirement that victim losses be a 'result' of the offense," and thus held that the statute

*(footnote continued on next page)*

This straightforward reading of the statutory text does not, as the People argue, cast any doubt on whether direct victim restitution is available when the victim's losses are caused by conduct that does, in fact, constitute a crime. If, for example, a thief steals a car and a third party reckless driver damages it, we do not doubt that the owner would be entitled to reimbursement from the thief under section 1202.4, subdivision (f). But that is because the owner has incurred losses resulting from the thief's criminal conduct (namely, the unlawful deprivation of his or her property) — and not because the law provides general authorization to order restitution for losses caused by noncriminal behavior (including involvement in an accident) that is related in some way to the commission of a crime.

Nor does this reading of the text cast doubt on whether a court may order restitution for losses incurred as a result of the means by which the defendant committed the offense. (*Richardson v. United States* (1999) 526 U.S. 813, 817; *People v. Russell* (2010) 50 Cal.4th 1228, 1257.) So, for example, if a burglar breaks a window to enter a home, he or she may be ordered to pay for the broken window in victim restitution, even though the burglary statute requires the prosecution to prove only that the defendant entered the house with the intent to commit a felony. (See Pen. Code, § 459.) If the burglar happens to have committed the prohibited entry by some means that causes damage to the home, a trial court certainly can — and must — take the damage into account in ordering restitution under section 1202.4, subdivision (f). But the authority to order

---

*(footnote continued from previous page)*

requires only that the restitution order have " 'some correlation or connection to the underlying offense' for which [the defendant is being] sentenced." (*Id.* at pp. 778, 777.)

restitution for losses caused by criminal conduct — in this example, the burglar's unlawful entry into the home — does not imply the authority the People assert here:  that is, the power to order restitution for losses caused by noncriminal conduct that took place before the commission of any crime but gave rise to the duty that defendant ultimately breached.

## C.

The People argue limiting direct victim restitution in hit-and-run cases to losses incurred by the crime itself — that is, the defendant's flight from the scene of the accident — undermines Vehicle Code section 20001(a)'s purpose of deterring negligent drivers from seeking to avoid potential liability for injuries and damage they have caused.  To preclude direct victim restitution for accident-related injuries, they argue, would incentivize at-fault drivers to flee the scene in hope of evading responsibility altogether or of covering up evidence of their fault.

The People are, of course, correct that Vehicle Code section 20001(a) is designed in part to deter drivers from seeking to avoid responsibility for accidents in which they are at fault.  (See *Escobar*, *supra*, 235 Cal.App.3d at p. 1510.)  But the means the Legislature chose to effectuate that purpose was to make leaving the scene of an accident a crime punishable by a term of imprisonment.  The Legislature made no provision for direct restitution for losses caused by the underlying collision.  And the Legislature that enacted Vehicle Code section 20001(a) in 1959 (Stats. 1959, ch. 3, § 20001, p. 1661) certainly would not have assumed that such restitution would otherwise be available; no statute provided general authority to award direct victim restitution in any amount until legislation implementing Proposition 8 was enacted more than two decades later. (See *Broussard*, *supra*, 5 Cal.4th at pp. 1072–1074.)

14

As the Legislature that enacted Vehicle Code section 20001(a) undoubtedly understood, even if direct victim restitution for accident-related injuries is not available, that does not mean that an at-fault driver will escape responsibility for the losses he or she has caused. Once the perpetrator has been identified, the victim of a hit and run who believes the other driver was at fault may obtain civil damages in a tort suit, just as he or she would if the driver had stopped and provided identification as required by law. And although fleeing the scene may permit drivers to attempt to hide evidence of their fault in the accident, the law accounts for this problem by permitting the trier of fact in a civil action to consider the failure to stop as some evidence of consciousness of responsibility for the accident. (*Brooks v. E. J. Willig Truck Transp. Co.* (1953) 40 Cal.2d 669, 676.) A driver who breaches the duty to stop thus runs the risk not only of criminal prosecution and possible prison time, but of incurring a material disadvantage in a civil suit as well.

We acknowledge the costs to the victims of hit-and-run offenses of instituting separate civil proceedings against a defendant whose negligence may have caused the underlying accident. Such costs are, however, unavoidable in a statutory scheme that limits mandatory direct victim restitution to losses incurred "as a result of the commission of a crime." (§ 1202.4, subd. (a)(1).) Even giving broad and liberal construction to section 1202.4 (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1208), we must give effect to the unambiguous language the Legislature has chosen.

15

By its terms, section 1202.4 authorizes — indeed, requires — courts in Vehicle Code section 20001 cases to award direct victim restitution for losses resulting from the defendant's crime: that is, flight from the scene of the accident without identifying himself or herself, rendering aid, or otherwise fulfilling the statutory requirements. (Veh. Code, § 20001(a).) Where the flight leads to a delay in the victim's access to medical care, for example, and the victim's injuries are exacerbated as a result, those costs are properly characterized as the "result of the commission of a crime" for the purposes of a restitution order. (Pen. Code, § 1202.4, subd. (a)(1).) Similarly, the cost of tracking down a defendant who has fled the scene of the accident may be recoverable because such losses, too, result from the defendant's unlawful flight. Section 1202.4 does not, however, permit courts to order direct victim restitution for losses that occur as a result of an underlying accident that involves no criminal wrongdoing.[3]

---

[3]     A different result might obtain if the defendant's crimes included an offense, such as reckless driving (Veh. Code, §§ 23103, 23104) or driving under the influence (*id.*, §§ 23152, 23153), that caused the accident that resulted in the victim's injuries. Defendant in this case was neither charged with nor convicted of such an offense. The People argue that the trial court's order was nevertheless justified because defendant could have been charged (but was not) with unlicensed driving. The People did not raise this argument in their petition for review, and we do not address it.

    *People v. Rubics*, *supra*, 136 Cal.App.4th 452, is disapproved to the extent it is inconsistent with this opinion.

16

### III.

The judgment of the Court of Appeal is affirmed, and the case remanded for recalculation of the amount of victim restitution in accordance with this opinion.

**KRUGER, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**

17

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Martinez
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 226 Cal.App.4th 1156
**Rehearing Granted**


_____

**Opinion No.** S219970
**Date Filed:** May 25, 2017
_____

**Court:** Superior
**County:** San Bernardino
**Judge:** Daniel W. Detienne


_____

**Counsel:**

Thomas E. Robertson, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting, Deputy State Solicitor General, Melissa Mandel, Meredith S. White, Lise S. Jacobson and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Thomas E. Robertson
225 Broadway, Suite 1460
San Diego, CA  92101
(619) 544-9911

Michael Pulos
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA  92101
(619) 738-9041