Filed 6/18/25  P. v. Fox CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B339074 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA115395) |
| v. | |
| DEVONTE FOX, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dorothy L. Shubin, Judge.  Affirmed.

Law Offices of John F. Schuck and John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Devonte Fox of hit and run driving resulting in injury to another, and the jury found that the offense involved an act revealing a high degree of callousness. The trial court denied Fox's request for probation and sentenced him to two years in prison. On appeal, Fox contends that the trial court abused its discretion by not sentencing him to probation. We find no abuse of discretion and affirm the judgment.

## BACKGROUND

I.  Evidence at trial

    A.  *Prosecution evidence*

Fox and Kierra Charles were childhood friends. But around 2020 or 2021, their friendship ended when Fox posted something on Instagram about a member of Charles's family. However, Fox remained friends with Charles's sister Kamuara Mitchell and cousin Shana Pittmon.

On the evening of June 27, 2023, Charles was at her apartment with her two young children when Pittmon called and asked Charles to meet her in the parking lot. Mitchell, Fox, and several others were in the parking lot, where they drank liquor. Charles saw Fox drinking, and Charles thought he was intoxicated. Fox said, "Hi," to Charles. Charles responded, "Hi," but Fox got mad, called her greeting fake, and cursed at her. Fox got close to Charles's face, and they argued. Their argument turned physical, they pushed each other, and Fox threw her to the ground.

The police arrived, having received a noise complaint. The group started to go inside, and the police left. Charles went to get her wallet, cellphone, and purse, which she had left on her cousin's car. However, Fox grabbed the items and ran to his car

2

with them.  Charles ran after Fox, who got into the driver's seat of his car.  Charles reached into the car to get her things, Fox grabbed her shirt, and he reversed the car, causing Charles to fly across the street.  Charles said the car hit "the wall of the next house across the street or something.  We hit something, and we bounced to the middle of the street, and he dropped me and kept going."  Charles thought she blacked out for a second.  When she could not get up, she "rolled" towards her apartment, screaming in pain.

Pittmon said it looked like Charles's leg was "off."  A family member wrapped Charles's leg in a shirt.  When an officer arrived at the scene, people were screaming and asking for help.  The officer applied a tourniquet to Charles's leg to stop the bleeding.  An ambulance took Charles to a hospital, where her leg was amputated.  Charles was in the hospital for a month and a half.

On June 29, 2023, which was about one day after the incident, Fox sold his car to a junkyard.

Charles has not spoken to Fox since their altercation, and he has never apologized to her.

B.    *Defense evidence*

Felix Smith was with Fox, his cousin, that night.  Fox drove Smith and another cousin to the parking lot.  During the gathering, Smith saw Fox and Charles drinking.  He also saw them arguing, although Smith described Fox as "playful" and Charles as "serious."  Charles pushed Fox, which just made him laugh.  Smith and Fox got into Fox's car to leave.  Smith wanted to drive because Fox had been drinking, but Fox insisted on driving.  When Fox was pulling out to leave, Charles was still arguing with Fox, and she kicked the car.  Fox stopped the car.

3

Initially, Fox was laughing, apparently thinking that Charles was "playing." But Charles hit the windshield with a bottle, cracking the windshield, and then she hit Fox with the bottle. Smith described Fox as scared. Smith said that the car was "already in reverse. So, I guess, like, he tried, to … press the gas but end[ed] up pressing the brake and we flew backwards." The car went over the curb, and Smith could hear Charles screaming. Charles's body did not come into the car. People said they were going to kill Fox and his family. Fox left.

Fox's cousin Umika Taylor was also at the gathering. Taylor saw Fox and Charles arguing, with Charles becoming physical with Fox. When Fox was in his car trying to leave, Charles threw her robe, said she was "about to F him up," and hit him on the head with a bottle. The car was reversing, but Charles was hitting Fox, who had his arm up. Taylor did not see Fox grab Charles's shirt and pull her into the car. When Charles was injured, Fox got out of the car and tried to help Charles, who screamed that she did not want to be touched. After the incident, Charles's family said "[a]ngry things." Taylor expressed concern for Fox's safety, and he left.

Charles's cousin Pittmon said everyone was drinking that night. After the police came the first time in response to the noise complaint, Fox got into his car to leave. Charles picked up a bottle and hit Fox in the head with it as he was reversing the car.

Babak Malek, a forensic scientist who does accident reconstruction, testified that the maximum speed at which Fox's car could have reversed was 30 miles per hour. If somebody whose upper body is inside a car is being dragged by the car, it would be difficult for that person to fall out and for the car to run

over the person's foot. But if the person were outside the car and leaning into it while hitting the driver with a bottle, the car, while in reverse, would first have contact with the person's left shoulder, causing a rotational movement and the person to fall.

## II. Verdict and sentencing

A jury convicted Fox of hit and run driving resulting in injury to another. (Veh. Code, § 20001, subd. (b)(1); count 3.) The jury found true the aggravating circumstance that the offense involved an act revealing a high degree of callousness. (Cal. Rules of Court, rule 4.421(a)(1).) The jury found Fox not guilty of count 1 for mayhem (Pen. Code, § 203) and deadlocked on count 2 for assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)).

The parties submitted sentencing briefs. In its brief, the People asked the trial court to impose the upper term of three years. In his brief, Fox argued that three mitigating circumstances applied to his case: (1) Charles was either the aggressor or a willing participant in the incident, (2) Fox had no prior or significant criminal record, and (3) Fox was employed, a father and a partner, a community volunteer, and his income was needed to support his family. He also asked the trial court to deem the offense a misdemeanor and to sentence him to probation with a suitable amount of jail time.

At the July 2, 2024 sentencing hearing, the trial court agreed that the second and third factors were mitigating but not the first. After considering the factors in aggravation and mitigation, sentencing memoranda, and statements made by Charles and her family at the hearing, the trial court refused to reduce the offense to a misdemeanor and denied probation. It explained, "The evidence at trial established that Mr. Fox saw

5

Ms. Charles'[s] horrific injury.  He heard her screams.  He knew she was injured in the road.  He fled the scene.  [¶]  The jury did not accept the defense claim that he was threatened at the scene.  The jury was given a necessity instruction.  Had they accepted this claim, they would have found him not guilty.  The credible evidence at trial established that Mr. Fox was aware of Ms. Charles'[s] horrific injury, and he chose to leave.  [¶] Significantly, the next day he took actions to try to conceal his connection to the crime.  He sold the car that was involved in the hit-and-run."  The trial court then denied probation and sentenced Fox to the midterm of two years in prison.

## DISCUSSION

Fox contends that the trial court abused its discretion by denying probation.  As we now explain, the trial court did not abuse its discretion.

Probation is the suspension of the imposition or execution of sentence and the order of conditional or revocable supervised release into the community.  (Pen. Code, § 1203, subd. (a).) "Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation."  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)  "The safety of the public, which shall be a primary goal through the enforcement of court-ordered conditions of probation; the nature of the offense; the interests of justice, including punishment, reintegration of the offender into the community, and enforcement of conditions of probation; the loss to the victim; and the needs of the defendant shall be the primary considerations in the granting of probation."  (Pen. Code, § 1202.7.)

Whether to grant or to deny probation requires considering all the facts and circumstances of the case. (*People v. Birmingham* (1990) 217 Cal.App.3d 180, 185.) Factors to consider include the nature, seriousness, and circumstances of the crime as compared to other instances of the same crime; the victim's vulnerability; whether the defendant inflicted physical or emotional injury; the degree of monetary loss to the victim; whether the defendant was an active or a passive participant; whether the crime was committed because of an unusual circumstance, such as great provocation; any prior record of criminal conduct; the likely effect of imprisonment on the defendant and his dependents; adverse collateral consequences on the defendant's life resulting from the felony conviction; whether the defendant is remorseful; and the likelihood that if not imprisoned the defendant will be a danger to others. (Cal. Rules of Court, rule 4.414.) In determining a defendant's "suitability for probation, the court may consider factors in aggravation and mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial." (Cal. Rules of Court, rule 4.414(c).)

A grant or denial of probation is within the trial court's sound discretion, and its ruling will not be disturbed unless it is shown the court exercised its discretion in an arbitrary or capricious manner. (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178–179.) Absent evidence clearly showing that the sentencing decision was arbitrary or irrational, we presume that the trial court acted to achieve legitimate sentencing objectives. (*Id.* at p. 179.) Reversal is not warranted merely because reasonable minds might disagree. (*Ibid.*) Only " ' "in a very extreme case" ' "

will we interfere with a trial court's exercise of discretion in denying probation. (*People v Urke* (2011) 197 Cal.App.4th 766, 773.)

Here, Fox argues that the trial court abused its discretion because he did not intend to cause injury to Charles, it is unlikely such an accident will be repeated, he has no prior record, and he has a family that he supports financially. The trial court, however, found that the aggravating factors outweighed the mitigating factors. The trial court weighed heavily that Fox fled the scene even though Charles was screaming in pain and that Fox tried to conceal his involvement in the crime by selling his car. The trial court was well within its discretion to focus on these aggravating factors. That is, while a Vehicle Code section 20001 offense is commonly referred to as a "hit and run," the offense is " 'more accurately described as fleeing the scene of an injury accident.' " (*People v. Martinez* (2017) 2 Cal.5th 1093, 1102 (*Martinez*).) Stated otherwise, the criminal act is the running, not the hitting. (*Ibid.*) And the legislative purpose behind the statute is to prevent the driver involved in an accident from leaving injured people in distress and danger for want of medical care and from trying to avoid possible civil or criminal liability. (*Ibid.*)

Fox agrees that leaving the scene was "uncalled for" but asserts that his doing so did not cause or increase Charles's injuries. However, Charles was bleeding and her injury was horrific, with a witness saying it looked like her leg was "off." A family member tried to help by wrapping Charles's leg with a shirt, and an officer thereafter applied a tourniquet. Therefore, Charles required immediate aid, which Fox was not present to provide because he had fled. This is exactly the kind of conduct

Vehicle Code section 20001 was designed to prevent. (*Martinez, supra*, 2 Cal.5th at p. 1102.)

The trial court also weighed against Fox his attempt to conceal his crime by selling his car the day after Charles was injured. Fox dismisses this as mere consciousness of guilt. (See, e.g., *People v. Famalaro* (2011) 52 Cal.4th 1, 35 [consciousness of guilt may be inferred from defendant's attempts to conceal evidence].) But the trial court was within its discretion to view it as an attempt to avoid liability, which is something Vehicle Code section 20001 was designed to prevent. (*Martinez, supra*, 2 Cal.5th at p. 1102.)

Moreover, the trial court disagreed that Charles instigated or participated in the incident. Instead, there was evidence that when the police first arrived in response to a noise complaint, everyone, including Charles, began to leave. Fox prevented Charles from leaving by taking her things and getting into his car with them. Based on this evidence and the trial court's finding that Charles's conduct was not a mitigating factor, the trial court was also impliedly finding that Fox was the active participant in the crime and the provocateur. (Cal. Rules of Court, rule 4.414(a)(6).)

In conclusion, notwithstanding the mitigating factors that Fox had no prior criminal record and a family that he was supporting, the trial court did not abuse its discretion by finding that the aggravating factors regarding the nature of the crime and Fox's conduct outweighed them. We therefore cannot agree that this is an extreme case warranting reversal of the decision to deny probation.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

ADAMS, J.

GAAB, J.*

---

\*      Judge of the Fresno County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.