Filed 11/26/25  P. v. Martinez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CRYSTAL MONIQUE MARTINEZ,<br><br>    Defendant and Appellant. | B336484<br><br>(Los Angeles County<br>Super. Ct. No. XWESA106740) |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph J. Burghardt, Judge. Affirmed.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, and Kenneth C. Byrne and Blake Armstrong, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

## INTRODUCTION

Defendant Crystal Monique Martinez appeals the trial court's order directing her to pay restitution to V.G., whose personally identifying information Martinez used in violation of Penal Code section 530.5, subdivision (a).[1] Specifically, Martinez contends the trial court erred in compensating V.G.'s loss of nonworking time spent personally repairing the damage Martinez did to V.G.'s credit. While we agree with Martinez that such a loss is not an "economic loss" within the meaning of section 1202.4, subdivision (a), Martinez fails to show the restitution was not a permissible condition of probation under section 1203.1 and affirm on that basis.

## BACKGROUND

V.G. believes she lost her wallet in January 2022 while walking to work. It somehow wound up in the hands of Martinez. Martinez was already a prolific identity thief, convicted on four separate occasions of violating section 530.5.

Martinez used V.G.'s information to try to open credit accounts in V.G.'s name at various retailers, including Nordstrom, Home Depot, and Best Buy. She also used V.G.'s identity to rent a truck from Home Depot (which was returned damaged) and to borrow books from the Los Angeles Public Library. Martinez was arrested in March 2022 after trying to use V.G.'s credit card to rent a car.

For her conduct relative to V.G., and pursuant to a plea deal negotiated with the prosecutor to avoid prison time, Martinez pled no contest to a single violation of section 530.5, subdivision (a). Before taking her plea, the trial court advised her

---

[1]     Undesignated statutory references are to the Penal Code.

that she would be "required to pay for any damages caused as a result of [her] crimes."

As part of the plea agreement, Martinez stipulated to aggravating factors, including her criminal record and poor performance on prior probation. The trial court ordered her imprisoned for three years, the high term, but, in accordance with the negotiated plea, suspended that term in favor of probation. It further ordered her to, among other things, "make restitution to [V.G.] pursuant to . . . section 1202.4 in an amount to be determined at a hearing."

At the restitution hearing, the prosecutor presented a claim by V.G. for $1,371.42. This amount reflected the 38 hours V.G. spent "cleaning up her credit as the result of identify theft" multiplied by $36.09, the hourly wage she was earning at the time. The prosecutor further clarified: "[V.G.] did not miss work to do this. This is time she spent outside of her normal working hours . . . ."

Defense counsel argued section 1202.4, subdivision (f)(3)(L) did not permit restitution for "spare time spent on trying to repair one's credit because it is not a specific economic loss within the meaning of the statute." Nevertheless, the trial court ordered Martinez to pay V.G.'s claim in full. In doing so, it noted its "discretion in terms of . . . whether [to] order . . . victim restitution. There [are] other factors that the court can consider in terms of rehabilitation[,] making the victim whole, [and] things like that when set[ting] restitution pursuant to probation."

Martinez timely appealed.

## DISCUSSION

### I.    Law and Standard of Review

"Under California law, '[c]onvicted criminals may be

required to pay one or more of three types of restitution.' [Citation.] They may be required to pay a restitution fine into the state Restitution Fund, to pay restitution directly to the victim, or to pay restitution as a condition of probation. The statutory requirements vary depending on the type of restitution at issue." (*People v. Martinez* (2017) 2 Cal.5th 1093, 1100 (*Martinez*).)

We are concerned here only with the latter two.

Direct victim restitution is mandated pursuant to section 1202.4, subdivision (f), "in every case in which a victim has suffered economic loss as a result of the defendant's conduct." (*Ibid.*) " 'The only limitation the Legislature placed on victim restitution [under section 1202.4] is that the loss must be an " ' "economic loss" ' " incurred as a result of the defendant's criminal conduct.' " (*Martinez, supra,* 2 Cal.5th at p. 1101, quoting *People v. Williams* (2010) 184 Cal.App.4th 142, 147.) Though the statute does not define "economic loss," it offers an illustrative list of compensable losses. (See § 1202.4, subd. (f)(3)(A)–(L).) With an exception only for felony violations of child sex abuse statutes, these examples are limited to certain categories of financial losses, each described as "expenses," "[w]ages or profits," or "fees and other costs." (*Ibid.*)

Restitution as a condition of probation is authorized by section 1203.1, subdivision (a)(3), which requires restitution in "proper cases." (*Ibid.*) Such restitution may be made "to the victim or the Restitution Fund." (*Id.*, subd. (b).) A court's authority to award victim restitution under section 1203.1 predates, and is different from, section 1202.4 restitution. (See *Martinez, supra*, 2 Cal.5th at p. 1100, fn. 1.) Whereas section 1202.4 is " 'explicit and narrow' " in scope (*Martinez*, at p. 1102, quoting *People v. Anderson* (2010) 50 Cal.4th 19, 29

4

(*Anderson*)), "[a] trial court's power to order restitution in probation cases is . . . broader" (*Martinez,* at p. 1101). Though broad, such power is not unlimited: " '[A] condition of probation must serve a purpose specified in the statute,' and conditions regulating noncriminal conduct must be ' "reasonably related to the crime of which the defendant was convicted or to future criminality." ' " (*People v. Moran* (2016) 1 Cal.5th 398, 403 (*Moran*).)

We review restitution orders made pursuant to section 1202.4 for abuse of discretion. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 (*Gemelli*).) "No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." (*Ibid.*)

"We review conditions of probation for abuse of discretion." (*People v. Czirban* (2022) 77 Cal.App.5th 1050, 1063 (*Czirban*).) A reviewing court will not strike a probation condition under section 1203.1 unless it " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*), superseded by statute on another ground as stated in *People v. Wheeler* (1992) 4 Cal.4th 284, 290–291; see also *Czirban*, at pp. 1063–1064.) The *Lent* test is conjunctive, such that "all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)

Finally, "[w]e consider questions of statutory interpretation de novo." (*Czirban*, *supra*, 77 Cal.App.5th at p. 1064.)

5

## II. Analysis

### A. The Restitution Order Was Not Authorized Under Section 1202.4

As already noted, restitution under section 1202.4 is limited, in relevant part, to "economic loss[es]." (*Id.,* subd. (f); *Martinez*, *supra*, 2 Cal.5th at p. 1101.) Such losses "includ[e], but [are] not limited to," the following: "(A) . . . The value of stolen or damaged property . . . . [¶] (B) Medical expenses. [¶] (C) Mental health counseling expenses. [¶] (D) Wages or profits lost due to injury incurred by the victim . . . . [¶] (E) Wages or profits lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution. . . . [¶] (F) Noneconomic losses . . . for felony violations of [enumerated child sex statutes]. [¶] (G) Interest . . . . [¶] (H) Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim. [¶] (I) Expenses incurred by an adult victim in relocating away from the defendant . . . . [¶] (J) Expenses to install or increase residential security . . . . [¶] (K) Expenses to retrofit a residence or vehicle [of a victim rendered disabled by the crime to make it accessible]. [¶] (L) Expenses for a period of time reasonably necessary to make the victim whole, for the costs to monitor the credit report of, and for the costs to repair the credit of, a victim of identity theft, as defined in Section 530.5." (§ 1202.4, subd. (f)(3).)

It is undisputed that the restitution ordered in this case does not fall into any of section 1202.4, subdivision (f)(3)'s enumerated categories. Though V.G. spent her time repairing her credit, she did not incur any "cost[]" (§ 1202.4, subd. (f)(3)(L))

6

within the ordinary meaning of that term.[2] (See Black's Law Dict. (9th ed. 2009) p. 397, col. 2 ["cost" is "[t]he amount paid or charged from something; price or expenditure"].) Moreover, she did not lose any wages because the time she spent repairing her credit was not time she otherwise would have spent working at her job. Thus, we must consider whether V.G.'s lost nonworking time is an "economic loss" within the meaning of section 1202.4, subdivision (f). It is not.

As here, " '[w]hen a term goes undefined in a statute, we give the term its ordinary meaning.' " (*De Vries v. Regents of University of California* (2016) 6 Cal.App.5th 574, 590–591.) "In divining a term's 'ordinary meaning,' courts regularly turn to general and legal dictionaries." (*Id.* at p. 591.) Black's Law Dictionary defines "economic loss" as "[a] monetary loss such as lost wages or lost profits." (Black's Law Dict., *supra*, at p. 589, col. 2.) V.G. suffered no monetary loss.

Another source of illumination of undefined statutory terms is related definitions in other statutes. (*Grayson Services, Inc. v. Wells Fargo Bank* (2011) 199 Cal.App.4th 563, 573.) The Civil Code defines " 'economic damages' " for one purpose as "objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, costs of repair or replacement, costs of obtaining substitute

---

[2] The People do not argue otherwise. Without addressing the language of section 1202.4, they only assert "the court's finding that [V.G.'s] use of her time should be compensable was not arbitrary and capricious, and not an abuse of discretion in this particular situation." But the question of whether the restitution was permissible under section 1202.4 turns on the interpretation of the statute, which we review de novo. (*Czirban, supra,* 77 Cal.App.5th at p. 1064.)

7

domestic services, loss of employment and loss of business or employment opportunities." (Civ. Code, § 1431.2, subd. (b)(1).) In contrast, the same provision defines " 'non-economic damages' " as "subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation." (*Id.,* subd. (b)(2).) Similarly, the term "noneconomic losses" is used in Civil Code section 3333.2, subdivision (a) to mean damages for "pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage." Again, V.G. suffered no monetary loss. She certainly suffered inconvenience, measurable by her hours of lost time, but the above definitions treat this as a *non*economic loss, not an economic one.

Even if the ordinary meaning of "economic loss" did not clearly exclude V.G.'s lost nonworking time, the enumerated illustrations of economic losses in section 1202.4, subdivision (f)(3) compel the conclusion that such time is excluded.

" '*Ejusdem generis* applies whether specific words follow general words in a statute or vice versa. In either event, the general term or category is "restricted to those things that are similar to those which are enumerated specifically." ' [Citation.] The canon presumes that if the Legislature intends a general word to be used in its unrestricted sense, it does not also offer as examples peculiar things or classes of things since those descriptions then would be surplusage." (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141.)

All relevant examples of "economic loss[es]"[3] in section 1202.4, subdivision (f)(3) involve either (i) an actual financial loss (e.g., value of stolen property, *id.*, subd. (f)(3)(A)) or monetary outlay (e.g., medical expense, *id.*, subd. (f)(3)(B)); or (ii) opportunity cost measurable in "[w]ages or profits" (*id.*, subd. (f)(3)(D), (E)). Lost nonworking time is not similar to lost working time, i.e., time which would otherwise have been spent earning wages or profits. Likewise, losing nonworking time is dissimilar to coming out of pocket to pay for a service or suffering the loss of a physical asset to theft or criminal damage.

For these reasons, we conclude an individual's lost nonworking time is not an "economic loss" within the meaning of section 1202.4, subdivision (f)(3). While we recognize authority that courts "liberally construe a victim's right to restitution and expansively interpret the meaning of economic loss," (*People v. Newsom* (2022) 73 Cal.App.5th 749, 751), we decline to stretch the term beyond its express limits. Compensating V.G. for her nonworking time spent repairing her credit would read the word "economic" out of the statute entirely.

Finally, we are aware of no decision deeming an individual victim's nonworking time spent personally dealing with the consequences of a crime compensable under section 1202.4. We have identified two published decisions in which the court ordered restitution for a victim's own efforts in remediating harm suffered by the defendant's criminality. But each took place in

---

[3] Paradoxically, one section 1202.4, subdivision (f)(3) example of "economic loss[es]" is "*[n]on*economic losses . . . for felony violations of [enumerated child sex abuse statutes]." (*Id.,* subd. (f)(3)(F), italics added.) We disregard this special case as irrelevant to Martinez's section 530.5, subdivision (a) conviction.

9

the context of a workplace or business—i.e., where the time spent presumably came at the expense of other economic activity. (See *Gemelli, supra,* 161 Cal.App.4th at pp. 1544–1545 [restitution to business for cost of repairs following break-in; "[e]ven if the owner did all of the repairs himself rather than hire someone else to do them, his time had value"]; *In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1134 [restitution to school district at pay rate of salaried employees who performed repairs following break-in; loss of work product employees would have generated if not diverted constituted "economic loss"].)

## B. Martinez Fails to Show the Restitution Award Was Not Authorized Under Section 1203.1

The People argue the trial court's restitution order, even if not mandated under section 1202.4, was within the trial court's broad discretion to order restitution as a condition of probation under section 1203.1. Specifically, they argue the order complies with the *Lent* factors (see *Lent*, *supra*, 15 Cal.3d at p. 486): (1) it relates to Martinez's crime because it compensates V.G. for time spent remediating its direct consequences; (2) it does not relate to noncriminal conduct on the part of Martinez; and (3) it does not require or forbid conduct which is not reasonably related to future criminality.

We further note the restitution order serves multiple purposes specified in section 1203.1, subdivision (j) (see *Moran*, *supra*, 1 Cal.5th at p. 403): It makes amends to V.G. for Martinez's breach of the law and serves the interest of rehabilitating Martinez by making her " ' "confront, in concrete terms, the harm [she caused V.G.]." ' " (*Anderson*, *supra*, 50 Cal.4th at p. 27.)

Martinez offers two arguments in response. First, "the trial

court plainly stated it was ordering [her] 'to make restitution to [V.G.] pursuant to . . . section 1202.4,' not as a condition of probation under section 1203.1." Second, "it makes no difference if the order was imposed as a condition of probation because restitution ordered as a condition of probation under section 1203.1 must be imposed 'in accordance with Section 1202.4 . . . .' (§ 1203.1, subd. (a)(3).)"

As to the first argument, the trial court did say at sentencing that Martinez would be required to pay restitution pursuant to section 1202.4. But it also advised Martinez she would be obligated, as part of her plea, to pay for "any damages" resulting from her crimes. And, at the restitution hearing, the court specifically referred to the additional discretion it had in ordering restitution in a probation case. In doing so, the court was clearly relying on its expanded authority in probation cases under section 1203.1, as section 1202.4, subdivision (f) generally applies to all convictions.

As to the second argument, Martinez misreads section 1203.1, subdivision (a)(3). In full, that provision states: "The court shall provide for restitution in proper cases. *The restitution order shall be fully enforceable as a civil judgment forthwith and in accordance with Section 1202.4 of the Penal Code.*" (Italics added.) Our Supreme Court in *Anderson, supra*, 50 Cal.4th at page 29 rejected the same argument Martinez makes here—that the language italicized above "mean[s] that a restitution order imposed under section 1203.1 must comply with the requirements of mandatory restitution orders imposed under section 1202.4." Instead of treating section 1203.1 as coextensive with, or otherwise limited by, section 1202.4, the *Anderson* court reaffirmed trial courts' "authority to impose restitution as a

11

condition of probation in circumstances not otherwise dictated by . . . section 1202.4." (*Anderson,* at p. 29.) Again, "[a] trial court's power to order restitution in probation cases is . . . broader." (*Martinez, supra,* 2 Cal.5th at p. 1101.)

Finally, we note Martinez's quotation, in her opening brief, to *People v. Friscia* (1993) 18 Cal.App.4th 834, 838: "While the expenditure of one's time is no small matter, the Legislature has failed to provide for compensation for such by way of a restitution order as a condition of probation." *Friscia* cannot control the outcome in this case. To reach its conclusion, the *Friscia* court relied on former section 1203.04, which mandated specific, limited victim restitution in probation cases. (See *Friscia,* at pp. 837, 838, 839.) Section 1203.04 has since been repealed. (Stats. 1995, ch. 313, § 8, eff. Aug. 3, 1995.)

## DISPOSITION

The trial court's restitution order is affirmed.

RICHARDSON, J.

WE CONCUR:

LUI, P. J.

CHAVEZ, J.