Filed 3/19/26  P. v. Pirozzi CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADAM MICHAEL PIROZZI,<br><br>    Defendant and Appellant. | 2d Crim. No. B343599<br>(Super. Ct. No. 21CR04504)<br>(Santa Barbara County) |

Adam Michael Pirozzi appeals a restitution order following no contest pleas to two counts of embezzlement (Pen. Code[1], § 506; counts 1 & 4).  He also admitted an aggravated white-collar crime enhancement because he caused a loss in excess of $500,000.  (§ 186.11, subd. (a)(1).)  Pirozzi was placed on probation with conditions.  After a restitution hearing the trial court ordered him to pay restitution.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

Pirozzi contends the trial court abused its discretion in awarding restitution to persons and an entity who were not direct victims and by not allowing him to call an attorney as a witness. He also contends the restitution awards are not supported by substantial evidence. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Pirozzi was a real estate broker who had access to various client financial accounts. He owned AMPCore, Inc., a property management company that conducted business as Santa Barbara Property Management. He received "money belonging to over 30 rental property owners in the form of rent payments and security deposits from tenants." The money was held in a client trust account so he could "make regular payments to the property owners based on their portion of the trust's income." Pirozzi was "entrusted" with and had control of these accounts acting as a trustee or broker.

In December 2019, Pirozzi "was entrusted with $150,000" from an agent of a property owner to be used for repairs on that owner's rental property. Pirozzi transferred the money from the trust account to his own personal account. When the agent subsequently inquired why the funds were not in the rental property trust repair account, Pirozzi said it was an accounting error. Pirozzi later made a false report to police that B.T., a former employee, stole his identity, forged documents, and took funds from the trust account.

In December 2020, Pirozzi transferred $512,896.77 from the client trust account to his own account. When a business partner questioned the transfer, Pirozzi lied and said the money was " 'frozen due to a cyber-attack.' " In February 2021, the agent of the property owner who had deposited $150,000 with

2

Pirozzi canceled the property management agreement. He requested repayment of the money he had given to Pirozzi to hold in trust for rental property repairs. Pirozzi refused this request and falsely claimed that B.T. had stolen the funds from the trust account.

In January 2024, a district attorney investigator determined that there were approximately 35 victims from whom Pirozzi had embezzled funds. The People filed a seven-count criminal complaint alleging Pirozzi committed embezzlement in 2019 (§ 506; count 1), theft from an elder or dependent adult (§ 368, subd. (d)(1); count 2), preparing false documentary evidence (§ 134; count 3), embezzlement in 2020 and 2021 (§ 506; count 4), money laundering (§ 186.10, subd. (a)(1); counts 5 & 6), and embezzlement from Central Holding Group, LLC (§ 506; count 7). The People also alleged a special allegation that Pirozzi committed an aggravated white-collar crime causing a loss of more than $500,000 (§ 186.11, subd. (a)(2)).

Pursuant to a plea agreement, Pirozzi pleaded no contest to counts 1 and 4 for embezzlement (§ 506). These counts did not specifically identify any victims. Pirozzi also admitted the special allegation that he caused a loss in excess of $500,000. (§ 186.11, subd. (a)(1).) Pirozzi's signed plea form indicates that the remaining counts would be dismissed with a *Harvey*[2] waiver. Pirozzi confirmed signing the plea form and accompanying addendum.

The plea form and addendum acknowledged that Pirozzi "[understood] that the sentencing judge may consider facts underlying dismissed counts to determine restitution" and

---

[2] *People v. Harvey* (1979) 25 Cal. 3d 754.

"consider the entire factual background of the case, including any dismissed or stricken charges or allegations or cases, and any charges the District Attorney agrees not to file, when . . . ordering restitution to victims (even victims of dismissed counts, or counts not filed per agreement)." As a factual basis for his pleas, Pirozzi admitted that he "was a licensed real estate broker," "operated a property management company . . . which did business as Santa Barbara Property Management," and "received money from clients which was supposed to [be] held in trust for the clients." The factual basis further stated that Pirozzi fraudulently transferred funds entrusted to him of $150,000 (count 1) and $512,896.77 (count 4) to his own account for his own benefit.

The probation presentence report indicated the People would seek victim restitution of $72,149.50 for Dennis Hoey, $178,901 for Santa Barbara Property Management, and $468,125 for Anthony McMahon. Consistent with the plea agreement, the People dismissed the remaining five counts, and the trial court placed Pirozzi on five years of probation with conditions including that he pay restitution to his victims. The trial court found that the prosecutor made a "prima facie showing" for the claimed restitution. Pirozzi did not challenge the court's finding that a prima facie showing had been made. Determination of the amount of restitution was set for a later hearing.

The People later filed a brief requesting restitution with an itemized list reflecting the embezzled funds and corresponding victims. At the restitution hearing, the People presented the victim statements of loss caused by Pirozzi's conduct and supplied supporting documentation. Pirozzi objected to some of the restitution amounts sought by the People and did not object to others. The trial court overruled the objections and found the

4

victims had presented sufficient evidence to support the amounts claimed.  The court ordered restitution of $72,149.15 to Dennis Hoey, $178,901 to Santa Barbara Property Management, and $468,125 to Anthony McMahon.

## DISCUSSION

*Restitution as a condition of probation*

"It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer."  (Cal. Const., art. I, § 28, subd. (b)(13)(A).) "Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss."  (*Id.*, subd. (b)(13)(B).)  And "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . .  The court shall order full restitution."  (§ 1202.4, subd. (f).)

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to [section 1203.1]."  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120 (*Carbajal*).)  "Restitution has long been considered a valid condition of probation."  (*Id.* at p. 1121.) "California courts have long interpreted the trial courts' discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction.  Under certain

5

circumstances, restitution has been found proper where the loss was caused by related conduct not resulting in a conviction." (*Ibid*.)

"' " [S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes . . . because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution.' [Citation]." ' " (*People v. Hove* (1999) 76 Cal.App.4th 1266, 1275.) "The court ' "may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole." ' . . . It may make a restitution order based on 'truncated evidence' such as declarations or probation reports, business records, and checks." (*People v. Plains All American Pipeline, L.P.* (2024) 101 Cal.App.5th 872, 898-899.)

"The standard of proof at a restitution hearing is preponderance of the evidence . . . . [Citation.] We review a victim restitution award for abuse of discretion. [Citation.] '[W]here the specific issue is whether the court's factual findings support restitution, we review those findings for substantial evidence.' " (*People v. Trout-Lacy* (2019) 43 Cal.App.5th 369, 373.) And once the prosecutor establishes a prima facie showing of loss, the burden shifts to the defendant to demonstrate that the amount is other than that claimed by the victim. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).)

*Restitution for Dennis Hoey*

Pirozzi contends the trial court erred by awarding restitution to Hoey in the amount of $72,149.15. He claims Hoey was not a direct victim of his criminal conduct and that

substantial evidence does not support the restitution award.  We are not persuaded.

"The court must order direct victim restitution in 'every case in which a victim has suffered economic loss as a result of the defendant's conduct.' " (*People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1409 (*Maheshwari*), quoting § 1202.4, subd. (f).)  As our Supreme Court reaffirmed in *People v. Martinez* (2017) 2 Cal.5th 1093, 1101 (*Martinez*), courts have broad discretion to impose probationary conditions " 'to foster rehabilitation and to protect public safety.' "  This includes the power to order restitution " 'even when the loss was not necessarily caused by the criminal conduct underlying the conviction,' " including in cases where " 'the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation].' " (*Ibid.*)

At the restitution hearing, Hoey testified he and Pirozzi were partners in a business called Hidden Oaks Ranch, a property consisting of a golf course and clubhouse.  The Mix family deposited money with the partnership for the purpose of hosting a wedding at the property.  The Mix family later learned that "all of [Pirozzi's] business operations were terminated" because of pending litigation involving the partnership.  Thus, the wedding could not take place at Hidden Oaks Ranch.

The Mix family asked for return of their deposit but Pirozzi "refused to give it" back.  Instead, he stole the money from the partnership and kept it for himself.  The Mix family subsequently filed a lawsuit against the partnership.  Because he was a partner, Hoey was liable for repayment of the deposit.  Hoey settled the lawsuit with the Mix family for $19,000 and incurred

7

attorney's fees in litigation defense. Hoey testified he suffered a direct loss caused by Pirozzi's conduct. He sought restitution of the settlement and attorney fees. His total loss was $72,149.15, and the People included a sworn statement from Hoey itemizing the attorney's fees and settlement payment.

We conclude it was proper for the trial court to award restitution to Hoey as a condition of Pirozzi's probation. Without Pirozzi embezzling the deposit, Hoey would not have been sued by the Mix family for return of the deposit, paid the settlement, and incurred attorney's fees. Thus, Hoey's loss of $72,149.15 was " 'proper, necessary, and a logical result of appellant's criminal conduct.' " (*Maheshwari*, *supra*, 107 Cal.App.4th at pp. 1409-1410.) Substantial evidence also supports the restitution order and Pirozzi failed to rebut the prima facie finding. (*Millard*, *supra*, 175 Cal.App.4th at p. 26.)

*People v. Birkett* (1999) 21 Cal.4th 226, upon which Pirozzi relies, is inapposite. Our Supreme court in *Birkett* held that insurance companies that had reimbursed owners of stolen vehicles were not " 'direct victim[s]' " entitled to restitution. (*Id.* at p. 229.) Here, Hoey and Pirozzi were in a partnership and Hoey suffered economic loss because of Pirozzi's criminal conduct. Thus, Hoey is a "direct victim of a crime" entitled to criminal restitution. (§ 1202.4, subds. (f), (k)(2).)

Nor does *People v. Saint-Amans* (2005) 131 Cal.App.4th 1076 assist Pirozzi. There, the defendant unlawfully withdrew money from a bank account belonging to another person. The bank covered the loss to that customer, thereby suffering an economic loss, and became a direct victim of the crime entitled to restitution. (*Id.* at p. 1083.) That is what happened here. When Pirozzi took the money deposited with the partnership, Hoey

8

became responsible for paying back that money and became a direct victim of Pirozzi's conduct. Hoey suffered an economic loss directly resulting from Pirozzi's criminal conduct.

Pirozzi also contends he was not convicted of stealing money from the partnership and therefore restitution should be denied. But "restitution has been found proper where the loss was caused by related conduct not resulting in a conviction." (*Carbajal, supra*, 10 Cal.4th at p. 1121.) Here, Pirozzi pleaded no contest to counts 1 and 4 for embezzling property from others and he expressly agreed in his plea agreement that the trial court could "consider the entire factual background of the case," including "victims of dismissed counts, or counts not filed per agreement." Because restitution " 'may serve the salutary purpose of making a criminal understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole' " (*People v. Cookson* (1991) 54 Cal.3d 1091, 1097), it was not an abuse of discretion to award criminal restitution to Hoey. Because Pirozzi was placed on probation, the court had broad discretion to fashion a restitution order. (*Martinez, supra*, 2 Cal.5th at pp. 1101-1102.)

*Restitution for Santa Barbara Property Management*

Pirozzi claims the trial court erred by awarding restitution of $178,901 to Santa Barbara Property Management. He contends the company is not a direct crime victim and substantial evidence does not support the award. We disagree.

Steven Downarowicz was the prior owner of Santa Barbara Property Management. He had sold the company to Pirozzi but later "agreed to take the company back" after Pirozzi "began embezzling money from the clients." Downarowicz took over the

9

liabilities and the prosecutor contended Pirozzi embezzled $178,901. Downarowicz "compiled a list of all the missing funds, which he provided to the District Attorney" to support the loss the company had suffered. The loss was documented by exhibits showing a total loss to the company caused by Pirozzi's embezzlement of $178,901. The trial court said there was "no opposing evidence to shed doubt on its authenticity."

We conclude that Pirozzi failed to rebut the prima facie finding and that substantial evidence supports the restitution award because the company incurred liabilities resulting from Pirozzi embezzling money from the client trust accounts. And contrary to Pirozzi's contentions, specifying the names of the clients' accounts from whom Pirozzi stole does not negate the company's economic loss resulting from having to repay the embezzled funds based on a preponderance of the evidence. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.) There was no abuse of discretion in awarding restitution to Santa Barbara Property Management.

*Restitution for Anthony McMahon*

Pirozzi contends the trial court erred by awarding restitution to McMahon in the amount of $468,125. He claims there was insufficient evidence or documentation to support this restitution award. We again disagree.

Pirozzi embezzled money from financial accounts associated with properties owned by McMahon, including the Montecito Gardens Property and the Valerio Property. The People presented a statement of loss showing "total restitution due of $468,125." The amount of loss was broken down into six categories: 1) money due for Montecito Gardens Property of $157,235; 2) money due on the Valerio Property of $96,515;

10

3) security deposits due for Montecito Gardens of $34,340; 4) security deposits due for Valerio of $13,035; 5) a missing $150,000 deposit; and 6) attorney fees of $17,000. We again conclude that Pirozzi failed to rebut the prima facie finding and that the People made a sufficient "showing to the court" to support restitution. (Pen. Code, § 1202.4, subd. (f).)

Pirozzi presented a letter from attorney Berg who represented the victims showing that Pirozzi made payments to McMahon. Thus, he contends the claim should be reduced. But the letter Pirozzi cites was dated 2021. The claim of loss prepared by attorney Berg, and relied on by the prosecution, was dated 2024. The People contended Pirozzi had not made a sufficient showing about what those earlier 2021 payments were for. The trial court agreed and found Pirozzi had not met his burden of proof. The issue was not whether Pirozzi made payments to McMahon in the past; it was whether Pirozzi's alleged payments were to reimburse McMahon for the six categories of loss mentioned in his 2024 statement of loss.

The trial court found that it was "not convinced" that Pirozzi was entitled to any credits. Weighing the evidence, resolving evidentiary disputes, and deciding credibility are exclusively decided by the trial court. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Here, the court found the letter Pirozzi relied on was ambiguous and did not support his claims for a credit. Based on the record, Pirozzi has not shown an abuse of discretion.

*No due process violation*

Pirozzi contends he was denied due process because he was deprived of the "right to present his own evidence." At the restitution hearing, attorney Berg was present. Berg represented

11

McMahon in civil litigation against Pirozzi. Pirozzi implies that the court erred by not allowing him to call Berg as a witness or to cross-examine him. We are not persuaded.

At the hearing, Pirozzi's counsel noted that Berg was present in the courtroom and stated, "I wonder if he might be examined briefly on this subject" of payments Pirozzi made to McMahon. The prosecutor stated Pirozzi "does not have the right to cross-examine witnesses." The trial court responded, "That's correct. It's discretionary with the court. . . . I know why he's here. I presume he's monitoring his client's interests."

A trial court's decision to admit or deny evidence is typically reviewed for an abuse of discretion. (*People Vieira* (2005) 35 Cal.4th 264, 292.) To support a claim that the trial court improperly excluded witness testimony, the appellant must make an offer of proof in the trial court showing what the proposed testimony would be. (*People v. Anderson* (2001) 25 Cal.4th 543, 580.) "In general, a judgment may not be reversed for the erroneous exclusion of evidence unless 'the substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means.' " (*Ibid.*, quoting Evid. Code, § 354, subd. (a).) "This rule is necessary because, among other things, the reviewing court must know the substance of the excluded evidence in order to assess prejudice." (*Ibid.*) Counsel here suggested the general subject matter of Berg's proposed testimony but did not offer what the substance of the testimony would be. Accordingly, neither abuse of discretion nor prejudice has been shown.

DISPOSITION

The order granting restitution is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.

We concur:


YEGAN, Acting P. J.


CODY, J.

Jean M. Dandona, Judge

Superior Court County of Santa Barbara

_____

Keith & Highland Law and Andrea Keith, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.